The People *v.* Compher et al.

| 14  447|
|——————|
| 70a  32|

THE PEOPLE OF THE STATE OF ILLINOIS, Appellants, *v.* WIL-
LIAM COMPHER et al., Appellees.

APPEAL FROM TAZEWELL.

Where a judgment is obtained by the people of the State of Illinois, on an offi-
cial bond against a sheriff and his securities for the amount of such bond in
the circuit court of Sangamon county, or any other county where the suit
may be taken by change of venue, and an assessment of damages on breaches
assigned has been taken on such judgment : —

*Held,* that a subsequent assignment of breaches of the covenants of the bond by
the plaintiff, was not a distinct action, but was to be regarded as a part of the
original suit, and therefore the fact, that the defendants to the judgment
resided in a different county from where the judgment was rendered, and
were served with notice of such subsequent assignment of breaches in the
county where they resided, did not oust the court of jurisdiction.

*Held,* also, that in order to authorize a further assignment of breaches, it was
not necessary, that the default should have arisen subsequent to the first
assessment. Any breach of the condition of the obligation, for which dam-
ages have not already been assessed, forms the proper subject-matter of a
new assignment and assessment.

*Held,* also, that the act of the legislature giving time to the defendants for
the payment of the judgment assessed on the first assignment of breaches,
was only a release of the judgment so fixed and determined, but not a release
of the judgment for the penalty of the bond, nor for any liability thereafter
to be established.

THE facts of this case are set out in the opinion of the court.

O. PETERS, for appellants.

The plaintiffs were entitled to their writ of inquiry in the
county of Tazewell; the original judgment having been ren-
dered there.

It is objected that our practice act inhibits the institutions of
these proceedings in that county, R. S. 413, § 2, because it is
not the county of the defendants.

The proceedings are instituted under the 18th section of
Practice Act, R. S. p. 416, § 18.

At common law, the plaintiff, in an action upon a bond with
conditions, could assign but a single breach ; and this for the
very good reason, that if there were one breach, the whole bond
was forfeited. 1 Saund. R. 586, top, in note; Mooney *v.* De-
merritt, 1 N. H. Rep. 188.

By the English statute 8 and 9 Will. 3, c. 11, the common
law was altered, and the plaintiff permitted to assign as many
breaches as he pleased. See Gainsford *v.* Griffith, 1 Saund. R.

58, note 1, where the 2d sect. of act 8 and 9 Will. is given at length. " May " is construed to mean must or shall, so that the plaintiff in a suit upon such bond must assign his breaches.

This English statute was enacted to protect obligors of bonds from penalties, and yet preserve the rights of obligees. Thus the act provides that the plaintiff may assign (shall assign) his breaches, and have his judgment for the penalty and an inquiry of the damages occasioned by the breaches assigned; which judgment is to stand as security for future breaches; and for such future breaches the plaintiff may have his *scire facias*, and execution.

Our statute was clearly intended to accomplish the same object, namely, to relieve obligors from the penalty, and yet secure obligees for the actual damages that have occurred from breaches of the bond. Its provisions are substantially the same as the English act, except the manner of giving the notice for the assessment of damages for other breaches.

By the English act, a *sci. fa.* goes to the sheriff, who is commanded to make it known, &c., *scire facias*, that the assessment is to be made, and execution to issue.

This is only a form of notice, a means of giving a party an opportunity to be in court : our mode of notifying is different. Instead of notifying by *sci. fa.*, " the defendant, or his attorney or agent shall have at least ten days' notice in writing of the time of executing the same," namely, of the subsequent writ of inquiry. The manner of proceeding otherwise is alike in both statutes.

What, then, is the nature of the proceedings under our statute ? Is it a suit, an action, so as to come within the provisions of sect. 2 of the practice act, requiring a defendant to be sued in his own county ? For it is conceded, that neither of the defendants reside in the county of Tazewell, where the original judgment was rendered, and where these proceedings were had.

If these proceedings are a suit, if this be a suing of the defendants, then we cannot have our assessment of damages in the manner we have attempted.

We insist then : — 1. That this bond was merged in the judgment, and no new suit can be maintained upon it as a bond. The rule of law is without exception, that a judgment upon a bond or other instrument or cause of action, merges the instrument, or cause of action, unless a statute has changed the rule.

2. As before stated, the statute of 8 and 9 Will. c. 11, was

enacted for the benefit and protection of obligors. And when it enacted that the plaintiff may assign breaches, and may have an assessment, &c., it means that such must be the course; it is compulsory, and this is the only remedy. 3 Saund. Rep. 187, note 2, and authorities there cited; Hardy *v.* Burr; Rose *v.* Roswell, 5 T. R. 538; Willoughby *v.* Swinton, 2 Saund. R. 550.

3. So that if the plaintiffs are not entitled to this remedy, they are remediless, and the legislature has put it in the power of the obligors, in all cases, by changing the venue, to bar all subsequent assessments, and all further liability. That is to nullify the act itself; to take advantage of their own act, to the injury of all others interested in the bond.

4. We say, then, that this is not a new suit, but a continuance of the old one. No new judgment is asked, but merely that the existing judgment may be enforced by a new execution.

A *sci. fa.* may be a new action, as where it is against bail.

Or where it is sued out to repeal a patent, &c. And, generally, when it is brought against one not a party to the former judgment, as on a recognizance, &c. 6 Dane's Ab. 463.

But when it is against parties to a judgment already rendered, then it is a continuation of the former action. 6 Dane's Ab. 463.

A *sci. fa.* can only issue from the court having the record on which it is founded. Osgood *v.* Thurston, 23 Pick. n. 110.

*Sci. fa.* to revive a judgment is a continuation of the former suit, and the venue ought to be laid in the county in which it was laid in the original action. McGill *v.* Penigo et al., 9 Johns. R. 259.

*Sci. fa.* against one charged as trustee (garnishee) is not a new suit, but is an incident to, or a part and continuation of, the original process; and hence it may be served if defendant has left the county or State, &c. Adams *v.* Rowe, 11 Maine R. 89.

So a *sci. fa.* on a judgment against a sheriff on a bond is not a new action, but a continuation of the former suit. State Treasurer, &c. *v.* Foster, 7 Verm. R. 53.

And the same doctrine is recognized in Maine, though by their statute, several actions may be brought and maintained simultaneously upon the same bond. White, Treasurer, &c. *v.* Wilkins, 24 Maine R. 299.

This question is more distinctly presented and determined in the case of Dickinson *v.* Allison, 10 Geo. Rep. 558.

In Georgia there is a constitutional provision, like our statute provision, requiring that a defendant shall be sued in the county

of his residence only. The process was sent out of the county for service; yet this was holden to be regular, and upon the ground expressly, that the *sci. fa.* was a continuation of the suit in which the judgment was rendered, and not an original action. See also, 1 Chitty, Pl. 269.

The *sci. fa.* is not to revive, but to enforce the judgment. If more than a year and a day has elapsed, in the case of an ordinary judgment, it must be revived by *sci. fa.* But in the case of a bond, the *sci. fa.* must issue, though the year has not elapsed; and this is solely upon the principle, that it is not to revive but to enforce the judgment.

This proceeding, then, is not a new action, but the continuation of the former action; and hence the court in Tazewell county, and that court only, has jurisdiction of the case, to award a writ of inquiry.

II. The second point presented by the court below on the motion to dismiss, is, whether the sheriff and his sureties are liable on his official bond for taxes collected by him which have been assessed by a township or school district for the use of schools.

Rev. St. p. 441, § 27, makes the sheriff *ex officio* collector of taxes.

Rev. St. p. 512, § 84, authorizes inhabitants to levy tax for support of schools, &c.

§ 85 provides for the mode of assessment to be made by clerk of county court, and causing it "to be set upon the tax book to be delivered to the county collector for that year," and "to be collected in the same manner as State and county taxes."

By these provisions, this class of taxes is to be collected in same manner, by the same officer, as State and county taxes: the sheriff is thus placed under same obligations and duties, and he and his sureties must necessarily be subject to the same liabilities.

N. H. PURPLE, for appellees.

1st. The assignment of breaches upon a bond conditioned for the performance of covenants, &c., under our statute, with a view to the execution of a writ of inquiry, is the commencement of a new suit.

2d. The circuit court of Sangamon county could not have taken jurisdiction either of the subject-matter of, or over the persons of the parties to, this proceeding. The same not being a matter affecting the interest or welfare of the State. Rev. St. p. 149, § 51; Ib. p. 413, § 1 and 2.

Proper construction of sec. 51. It does not mean that the Sangamon circuit court shall have jurisdiction in all cases where suits are brought or may be brought in the name of the people, &c., not intended to include bonds of executors and administrators, probate justices, county recorders, guardians, &c. Rev. St. 541–2, § 27; Ib. 426, § 3; Ib. 431, § 3; Ib. 265, § 5. But only to cases where the State has an interest as a party. True, where judgment is rendered on bond, any person may have a writ of inquiry. Rev. St. 516, § 15. This means only such persons as, if they had originally sued, the court would have had jurisdiction.

3d. If the circuit court of Sangamon county had no jurisdiction of the parties or subject-matter, the circuit court of Tazewell county had none of course.

4th. Because it is not shown by the record that there was ever any suit on the original bond sued on, in the Sangamon court, pending in the Tazewell circuit court, or any change of venue from Sangamon to Tazewell, or any judgment in the Tazewell court. There is no averment of the existence of any such judgment in the assignment of breaches.

5th. It is not shown either by the writ or the assignment of breaches, that the writ is issued as required by law, to assess damages for breaches happening after the former judgment or assessment. Nor that the damages claimed have not been previously assessed. Rev. St. 416, § 18.

6th. The sheriff is only liable to pay to the treasurer of the township on demand. It is not shown that any such demand has ever been made. Laws, 1849, p. 173, § 72.

7th. The securities are discharged by the act of 14th February, 1851. Acts of 1851, p. 131.

TREAT, C. J. In September, 1849, William Compher, sheriff of Peoria county, with William S. Moss, Clark Cleaveland, and Clement Ewalt, as his sureties, executed a bond to the people of the State of Illinois, in the penalty of $62,000, and conditioned that he would perform all the duties required to be performed by him, as collector of Peoria county, in the time and manner prescribed by law. In August, 1850, the people brought an action of debt on the bond, in the Sangamon circuit court, to recover the amount of the State tax for the year 1849, collected by Compher, and not paid into the State treasury. The cause was removed to the Tazewell circuit court; and at the September term, 1850, of that court, a judgment was rendered against Moss, Cleaveland, and Ewalt, for the penalty of the bond as debt, and the sum of $7,072.42, as damages, that being

the amount of the State tax received by Compher, but not paid
over. That judgment was affirmed in this court, at the De-
cember term, 1850.

On the 14th of February, 1851, the legislature passed an act
in these words : " Whereas William Compher, late collector of
Peoria county, has absconded, leaving his securities liable to
the State upon his official bond, for the revenue collected by
him for the year 1849 ; and whereas judgment has been ren-
dered by the Supreme Court of this State against the securities
of the said Compher, for the amount of the revenue due the
State for the year 1849; now, therefore, Be it enacted by the
people of the State of Illinois, represented in the general as-
sembly : Section 1. That the securities of said Compher be and
they are hereby required to pay the costs of said suit, and pay
into the State treasury the sum of $3,500, with interest thereon,
on or before the 31st day of December, 1851, and that they pay
the remaining balance of said judgment, $3,572.42, with inter-
est thereon, on or before the 1st day of December, 1852. Sec-
tion 2. That the time shall be extended as aforesaid : Provided,
that the judgment and execution issued thereon shall be and
remain a lien upon all the real estate of the said securities until
the payment thereof : Provided, further, that if said securities
shall well and truly comply with all the provisions of the first
section of this act, then and in that case they shall be and here-
by are released from all further liability on said judgment; but
if they shall fail or neglect so to do, then it shall be the duty of
the auditor to proceed with the collection of said judgment as
now required by law."

At the April term, 1852, of the Tazewell circuit court, after
due notice had been given to the defendants, and by the leave
of the court, the plaintiffs, for the use of a certain township in
Peoria county, filed an additional assignment of breaches of the
condition of the bond, alleging in substance, that Compher, as
collector of said county for the year 1849, collected and re-
ceived the sum of $1,300, it being the amount of a school tax
levied for that year on the property in that township, and that
he had wholly neglected and refused to pay over the same; and
a writ of inquiry was thereupon issued to assess the damages
under this assignment of breaches. During the same term, the
defendants entered a motion to quash the writ of inquiry. An
affidavit was filed in support of the motion, stating that the de-
fendants resided in Peoria county, and were there served with
notice of the application to assign further breaches of the bond ;
and that they had fully complied with and performed all the
terms and conditions of the act of the 14th of February, 1851.

The chief grounds relied on to sustain the motion, were the following.   1. The court had no jurisdiction of the persons of the defendants, or of the subject-matter of the proceeding.   2. The breach assigned did not happen after the rendition of the judgment on the bond.   3. The defendants were released from all further liability, by the act of the 14th of February, 1851, and the performance of the conditions thereof.   The court quashed the writ of inquiry, and dismissed the proceeding ; and the plaintiffs prosecuted an appeal.

1.  The second section of the R. S. c. 83, provides : " It shall not be lawful for any plaintiff to sue a defendant out of the county where the latter resides, or may be found, except in cases where the debt, contract, or cause of action accrued in the county of the plaintiff, or where the contract may have specifically been made payable."   But this provision is qualified by R. S. c. 29, § 51, which declares : " The circuit court of Sangamon county shall have original jurisdiction in all causes, suits, and motions, against every person or persons, body politic or corporate, in this State, in which the State shall be a party, plaintiff or complainant, whether such causes, suits, and motions grow out of contracts express or implied, or out of *torts* of any nature or description whatever, affecting the interests and welfare of the State."   By virtue of this statute, the State may commence a suit at law or in equity in the Sangamon circuit court, and process may issue against the defendant to any county in the State.   The original action on the bond was, therefore, properly brought in that county.   It was also competent to change the venue, so as to give the circuit court of Tazewell county jurisdiction of the cause.   And that court had authority to render the judgment, as this court decided in a direct proceeding to reverse it.   But it is insisted that the court had no jurisdiction of the present proceeding, inasmuch as all of the defendants resided in Peoria county, and were there served with notice.   This will depend upon the character of the proceeding.   If it is to be considered a distinct action, the position may be correct ; but if it is to be regarded as a part of the original suit, the position cannot be maintained.   The R. S. c. 83, § 18, provides : " In actions brought on penal bonds, conditioned for the performance of covenants, the plaintiff may assign as many breaches as he may think fit,.and the jury, whether on trial of the issue or of inquiry, shall assess damages for as many breaches as the plaintiff shall prove, and the judgment for the penalty shall stand as a security for such other breaches as may afterwards happen, and the plaintiff may, at any time afterwards, sue out a writ of inquiry, to assess damages for the

breach of any covenant or covenants contained in such bond subsequent to the former trial or inquiry." The English statute, from which this provision was mainly taken, authorized a *scire facias* to issue upon the judgment, suggesting other breaches of the bond than those originally assigned. Our statute dispenses with the issuing of a *scire facias,* and authorizes additional breaches to be assigned, upon giving the defendant notice. The proceeding, however, is substantially the same in either case. A *scire facias* to set aside letters patent, or to foreclose a mortgage, is considered an original proceeding. But a *scire facias* upon a judgment, is uniformly regarded as but a continuation of the former action. Tidd's Practice, 1096; Executors of Wright *v.* Nutt, 1 Durnford & East, 387; McGill *v.* Penigo, 9 Johnson, 259; State Treasurer *v.* Foster, 7 Vermont, 52; Adams *v.* Rowe, 2 Fairfield, 89. And such must be deemed to be the nature of the present proceeding. It cannot be held otherwise, without denying all further remedy upon the covenants in the bond. No action can be maintained on the obligation, for it is merged in the judgment. The judgment is for the entire penalty, and no further proceedings can be had upon the bond, except in the way indicated by the statute. The suggestion of further breaches under the statute, like the issuing of a *scire facias* upon a judgment, must of necessity be had in the court where the judgment is entered. The court below had jurisdiction of the proceeding. The case of Dickinson *v.* Allison, 10 Georgia, 557, is very much in point. The constitution of Georgia declared, that a party to a civil suit should not be sued out of the county of his residence. Allison sued out a *scire facias* from the superior court of Greene county, to revive a judgment rendered therein in his favor against Chaffin and Dickinson, both of whom resided in a different county, and were there served with copies of the *scire facias.* A judgment was entered against them on the return of the *scire facias;* and on error, it was objected that the process improperly issued to a foreign county. The court said : " The *scire facias* to revive a judgment, must issue from, and be returnable to, the court where the judgment is rendered. That court alone has jurisdiction. No other court can acquire the cause, for the *scire facias* is but a continuance of the original action. Incident to the jurisdiction, is the right to issue process to bring the defendants before the court." Again : " Whilst it is in the nature of an action, yet we think it is in continuance of the suit in which the judgment was rendered, and, therefore, not a criminal action ; and for that reason, not such a civil case as the constitution contemplates."

2. The second ground of objection is equally untenable. In order to authorize a further assignment of breaches, it is not necessary that the default should arise subsequent to the former assessment. It is sufficient that it is for another and different breach than the one upon which the assessment was made, and that the collector still continues in default. Any breach of the condition of the obligation for which damages have not already been assessed, forms the proper subject-matter of a new assignment and assessment. The judgment entered for the penalty stands as security for all such breaches, precisely as if no suit had been brought on the bond. Such, we doubt not, is the true construction of the statute. It certainly was not the intention of the legislature, that the State, by bringing an action on the bond, and having her damages assessed, should deprive the county and townships of all remedy upon the obligation. It was executed as well for their benefit, as that of the State. The State only claimed to recover the amount of revenue due her; leaving the county and the townships to assert their rights upon the bond, by the assignment of further breaches under the statute. It was not the duty of the State to suggest as a breach, the non-payment of the county and school taxes. That was a matter exclusively for those corporations. They may, indeed, assert their rights in the name of the State, so far as it may be necessary. Bonds of this character are designed to secure all parties interested in the collection and distribution of the revenue. But that object would be to a great degree defeated by the construction contended for. An assessment of damages at the instance of a single party, would preclude all others from a recovery upon the bond, unless their right of action accrued after the assessment.

3. The act of the 14th of February, 1851, and the payments made in pursuance thereof, did not exonerate the defendants from liability for the county and school taxes. The only object of the act was to extend the time for the payment of the amount ascertained to be due to the State. It was not intended to interfere with the judgment for the penalty of the bond, or preclude further assignments of breaches under the statute. This is manifest from a bare inspection of its provisions. The term judgment, as used in the act, refers merely to the assessment of damages, and not to the judgment for the penalty. The preamble recites a judgment "for the amount of the revenue due the State for the year 1849." This evidently refers only to the award of damages, to enforce which the State was entitled to execution. By the first section, the defendants are required to pay "the sum of $3,500, with interest thereon, on or before the

31st day of December, 1851;" and to pay "the remaining balance of said judgment, $3,572.42, with interest thereon, into the State treasury, on or before the first day of December, 1852." The aggregate of these sums is the amount of damages assessed under the assignment of breaches. The second section provides that if the payments are made, the defendants shall be "released from all further liability on said judgment." The release was to operate upon their liability as ascertained and fixed by the judgment, and not upon any liability thereafter to be established.

The court erred in dismissing the proceeding; and its judgment is reversed, and the cause is remanded.

*Judgment reversed.*